IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**ERICA KINSMAN,**

    **Plaintiff,**

v.                                         Case No. 4:15cv235-MW/CAS

**FLORIDA STATE UNIVERSITY
BOARD OF TRUSTEES,**

    **Defendant.**

_____/

## ORDER DENYING MOTION TO DISMISS

This is an action under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688. Erica Kinsman is a former student at Florida State University ("FSU"). The Board of Trustees administers the university.[1] In her complaint, Ms. Kinsman alleges that another FSU student—the football player Jameis Winston—raped her at an off-campus apartment in Tallahassee, Florida. She claims that FSU failed to investigate properly or respond to the reported assault and that this denied her educational benefits. FSU moves to dismiss the

---

[1] Florida law provides that the Board has capacity for suit. § 1001.72, Fla. Stat. For convenience, this order refers to Defendant as "FSU."

1

complaint, arguing that under Federal Rule of Civil Procedure 12(b)(6) it fails to state a claim upon which relief can be granted. This order denies the motion to dismiss the complaint.

I

The relevant part of Title IX says that "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has found an implied right of action for individuals to enforce that requirement. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979). A person may bring a claim for known student-on-student sexual harassment, which is "discrimination" under Title IX. *See Davis v. Monroe Count Bd. of Educ.*, 526 U.S. 629, 650 (1999).

A plaintiff seeking recovery for student-on-student sexual harassment must prove four things. First, the defendant must be a recipient of federal funds under Title IX. *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1293 (11th Cir. 2007). It is undisputed that FSU is a Title IX funding recipient. ECF No. 35, at 5. No further discussion of this requirement is necessary.

Second, "an 'appropriate person,' must have actual knowledge of the discrimination or harassment the plaintiff alleges occurred." *Williams*, 477 F.3d at 1293 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

"[A]n appropriate person . . . is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Id*. (internal quotation marks omitted).

Third, "a funding recipient is liable for student-on-student harassment only if 'the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities.' " *Id*. (quoting *Davis*, 526 U.S. at 633). A funding recipient is deliberately indifferent "only where [its] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id*. at 1296 (quoting *Davis,* 526 U.S. at 648). Put another way, it must amount to "an official decision by the recipient not to remedy the violation." *Gebser*, 524 U.S. at 290. The deliberate indifference asserted must subject the plaintiff to further harassment; that is, it must cause the complaining student to undergo harassment or make the student liable or vulnerable to it. *Davis*, 526 U.S. at 644; *Williams*, 477 F.3d at 1296.

Fourth, "the discrimination must be 'so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit.' " *Williams*, 477 F.3d at 1293 (quoting *Davis*, 526 U.S. at 633).

II

On January 7, 2015, Ms. Kinsman filed her Title IX complaint in this Court. She asserts that officials at FSU knew she reported that Mr. Winston raped her,

that its response to that information was clearly unreasonable, and that had FSU not been deliberately indifferent, she would not have been subjected to further discrimination.  She seeks money damages, injunctive relief, and attorney's fees.

FSU seeks dismissal of that complaint.  It identifies three forms of discrimination alleged in the complaint: (1) harassment caused by Ms. Kinsman having to be on campus with Mr. Winston; (2) harassment from third parties via social media; and (3) harassment in not being able to return to school.  For each of these categories, FSU argues that the complaint fails to meet one or more of the four requirements for a Title IX claim.  For that reason, FSU says the complaint does not state a Title IX claim.

When considering a motion to dismiss under Rule 12(b)(6), this Court must accept the allegations in a complaint as true and read them in the light most favorable to the plaintiff.  *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir. 2004).  The sole issue before this Court is whether the complaint, considered through this lens, has sufficient factual matter to state a Title IX claim that is plausible on its face.  In short, it does.  For the following reasons, the motion to dismiss will be denied.

III

In its first major point, FSU says it is not liable for any alleged harassment caused by Ms. Kinsman having to be on campus with Mr. Winston.  First, FSU

argues that no "appropriate person" had knowledge of Ms. Kinsman's allegation until November 2013. Second, even if one did, FSU says its response before then of providing a victim advocate to give assistance and explain the student-disciplinary process was not "clearly unreasonable." Third, FSU says that merely being on campus with Mr. Winston for some months was not harassment under Title IX. This Court will address each argument in turn.

A

FSU's first argument is that the complaint fails to allege that any "appropriate person" had actual knowledge of Ms. Kinsman's report until November 2013. Basically, FSU says two officials did not have either enough authority or knowledge to take corrective action.

FSU asserts that neither its associate athletics director nor its head football coach is an "appropriate person" under Title IX. An appropriate person is one with "authority to take corrective action to end the discrimination." *Williams*, 477 F.3d at 1293. But the "ultimate question of who is an appropriate person is 'necessarily a fact-based inquiry' because of the varying roles of educational officials." *Doe v. Sch. Bd. of Broward Cnty.*, Fla., 604 F.3d 1248, 1256 (11th Cir. 2010) (quoting *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1247 (10th Cir. 1999)). It is plausible that the facts will show that one or both of these officials had enough authority over a member of the football team to take corrective action. *See, e.g.*,

*Williams*, 477 F.3d at 1294–95. This Court cannot say now, as a matter of law, that these officials are not appropriate persons under Title IX.

Next, FSU argues that these persons did not know enough to have "actual knowledge" under Title IX. FSU says that Ms. Kinsman "does not—and cannot—allege that [the head football coach] and [the associate athletics director] knew that Winston's alleged victim was an FSU student, much less that they knew the actual identity of Winston's alleged victim." ECF No. 35, at 9. This is not sufficient for a Title IX claim, FSU argues, because the law protects against *known* student-on-student harassment. At least for this type of claim, it follows that the school official must know that *both* the student *and* the alleged assailant are students, or at least connected to the funding recipient's educational programs.[2]

---

[2] To defeat FSU's argument that those official had insufficient knowledge, Ms. Kinsman argues in part that "Title IX not only protects students; it also protects third parties from harassment by individuals under the school's control such as Winston." *See* ECF No. 44, at 8–9 n.4. The support for that proposition is a Dear Colleague Letter ("DCL") issued by the U.S. Department of Education, Office of Civil Rights. Office for Civil Rights, U.S. Dep't of Educ., *Dear Colleague Letter: Sexual Violence* 4 (2011), http://www2.ed.gov/about/ offices/list/ocr/letters/colleague-201104.pdf (included in this record at ECF No. 44-2). The DCL says that Title IX "protects third parties from sexual harassment or violence in a school's educational programs and activities." It gives examples of "a high school student participating in a college's recruitment program, a visiting student athlete, . . . a visitor in a school's on-campus residence hall," and "employees of a recipient." ECF No. 44-2, at 4, n.11. What those examples have in common is some connection to the to the school's educational programs. Notably, Ms. Kinsman has not offered any other authority for the proposition that Title IX extends to all persons coming into contact with students at off-campus establishments. This Court need not decide that issue today. But if Ms. Kinsman means to rely on such a theory, she may need more convincing legal authority to support her position.

It is true that the complaint does not specifically allege that TPD disclosed Ms. Kinsman's name or student status to the FSU athletics department on January 22, 2013. But it does allege that "[s]enior FSU Athletics Department . . . officials had actual knowledge that Plaintiff reported being raped by Winston as of no later than January 22, 2013, six weeks after the rape." ECF No. 1 ¶ 78. Elsewhere in the complaint, Ms. Kinsman refers to herself at that time as "an FSU freshman." *Id.* ¶ 9.[3] For the purposes of this motion to dismiss, this Court assumes those allegations are true.

Taken together, the complaint plausibly alleges that an appropriate person had actual knowledge as of January 22, 2013.

B

In its second argument, FSU insists that even if an appropriate person had actual knowledge of Ms. Kinsman's allegation before November 2013, its response up until then was not clearly unreasonable. Under Title IX, a funding recipient is liable for student-on-student harassment only when it acts with deliberate indifference; that is, where its "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

---

[3] This Court notes that Ms. Kinsman initially filed her complaint anonymously as "Jane Doe" and referred to herself throughout the complaint only as "Plaintiff."

FSU says it immediately provided Ms. Kinsman with a victim advocate who explained how to change a class shared with Mr. Winston, that the victim advocate informed Ms. Kinsman of the student-disciplinary process, and that FSU honored what it describes as Ms. Kinsman's "informed decision not to initiate that process between January and November 2013, when she left campus." ECF No. 35, at 13. Should the facts bear this out, there is some support for the general proposition that such a response might not be clearly unreasonable. *See, e.g.*, *Roe v. St. Louis Univ.*, 746 F.3d 874, 883 (8th Cir. 2014) (holding deliberate indifference was not established where administrator offered resources and explained how to file rape complaint but alleged victim declined to do so). But the facts relevant now are those alleged in the complaint.

In the complaint, there is nothing about Ms. Kinsman affirmatively declining a student-disciplinary hearing. She alleges that no one at FSU offered any safety precautions. She further alleges that between January 22, 2013, and November 13, 2013, senior athletics officials took little if any action to investigate or respond to the alleged rape of a student by another student in their charge.

The complaint plausibly alleges deliberate indifference during this period.

## C

In its third argument, FSU claims that Ms. Kinsman being on campus with Mr. Winston until November 2013 was not serious enough to constitute "further discrimination" under Title IX.

"[A] Title IX plaintiff at the motion to dismiss stage must allege that the Title IX recipient's deliberate indifference to the initial discrimination subjected the plaintiff to further discrimination." *Williams*, 477 F.3d at 1297. That is, the deliberate indifference must cause the complaining student to undergo harassment or make the student liable or vulnerable to it. *Id.* at 1296.

As other courts have recognized, educational benefits are "not 'equally available' if the educational environment is 'disparately hostile.' " *S.S. v. Alexander*, 177 P.3d 724, 744 (Wash. Ct. App. 2008) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 750 (2d Cir. 2003)). Under Title IX, though, the discrimination complained of must be so "severe, pervasive, and objectively offensive" such that it effectively bars the victim's access to an educational opportunity or benefit. *Davis*, 526 U.S. at 633. "Whether gender-oriented conduct rises to the level of actionable harassment thus depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and victim, and the number of individuals involved." *Id.* at 651 (citations omitted).

When it comes to Title IX sexual harassment, such as rape, it is said that "[t]he effect of such abusive conduct on a victim does not necessarily end with a cessation of the abusive conduct, particularly if the victim and abuser retain the same or similar roles in an educational institution." *See Wills v. Brown Univ.*, 184 F.3d 20, 36–37 (1st Cir. 1999).  This Court agrees that the possibility of further encounters "between a rape victim and her attacker could create an environment sufficiently hostile to deprive the victim of access to educational opportunities provided by a university." *Kelly v. Yale Univ.*, No. CIV.A. 3:01-CV-1591, 2003 WL 1563424, at *4 (D. Conn. Mar. 26, 2003); *see also Doe ex rel. Doe v. Derby Bd. of Educ.*, 451 F. Supp. 2d 438, 444 (D. Conn. 2006) (holding the "constant potential for interactions" between harasser and rape victim could support conclusion that harassment was "severe, pervasive, and objectively offensive").  It does not require mental gymnastics to reach this conclusion.

Among other things, Ms. Kinsman alleges that over a ten-month period (albeit with a summer break in between semesters) she was fearful of Mr. Winston (with whom she shared a class), she struggled with her coursework, she altered or avoided social activities at school, and she was frightened when she saw Mr. Winston during a midterm examination.  She specifically asserts that the presence of her alleged attacker on campus and its impact on her educational opportunities forced her to leave school and prevented her from returning to

continue her education.  ECF No. 44, at 18.  In similar circumstances, the Eleventh Circuit has called such a decision "reasonable and expected."  *Williams*, 477 F.3d at 1298.

For Title IX purposes, it is certainly plausible that this alleged harassment was severe and pervasive enough to deprive her of educational benefits.  *See Davis*, 526 U.S. at 650–51.

IV

In its second major point, FSU further asserts that it is not liable for third-party harassment via social media.  FSU concedes that exposure to such comments can constitute harassment that is sufficiently severe for purposes of Title IX.  ECF No. 35, at 15.  FSU says it is not responsible for this harassment because it could not control the context in which it occurred.  Cast in slightly different terms, FSU further asserts that any alleged deliberate indifference on its part could not have been the proximate cause of any harassment Ms. Kinsman suffered through social media or the internet.

Ms. Kinsman responds that if FSU had taken action back in January 2013 when officials allegedly learned of her report to TPD, Mr. Winston " 'would have been removed as a threat to [her] long before ever suiting up to play football in a Seminoles jersey,' thereby reducing the likelihood that [she] would have been relentlessly vilified by the press and the Seminole football community."  ECF No.

11

44, at 19 (quoting ECF No. 1 ¶ 146).  FSU says that theory relies on "rank speculation."  Ms. Kinsman says it does not.

Under *Davis*, a Title IX funding recipient's liability for damages is limited to "circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs."  526 U.S. at 645.  At least one court, though, has found that while similar third-party harassment is not itself actionable, it may bear on the "severity and offensiveness of having to go to school" with one's alleged attacker.  *Derby*, 451 F. Supp. 2d at 445.

This Court has already found that the complaint states a claim on those grounds.  *See* Part IV, above.  It need not decide today the whole scope of the claim.  This is especially true when, as here, the parties have only briefly addressed the issue of causation and third-party harassment in their respective submissions and the record is undeveloped.

V

In its third major point, FSU argues that it is not liable for harassment in the form of Ms. Kinsman's alleged exclusion from school.  It says that Ms. Kinsman's inability to return has not been caused by its alleged deliberate indifference.

The Eleventh Circuit confronted somewhat similar facts in *Williams*.  477 F.3d at 1296–97.  In that case the plaintiff reported a rape and left school the next day.  *Id*. at 1289.  The police investigated but the university waited eleven months

from the incident and eight months after having a full report before conducting a disciplinary hearing.  *Id*. at 1296–97.  The plaintiff alleged that she may return if the university implemented more effective procedures to deal with student-on-student harassment.  *Id*. at 1298.  But the university took no precautions to prevent future attacks.  *Id*. at 1297.  The court said the university's failure to take action was "inexplicably and discriminatory."  *Id*.  The court concluded that, viewed in the light most favorable to the plaintiff, the university acted with deliberate indifference.  *Id*. at 1296.[4]  The deliberate indifference in *Williams* was "followed by further discrimination, this time in the form of effectively denying [the plaintiff] an opportunity to continue to attend" the school.  *Id*. at 1297.

The result is the same in this case.  According to the complaint, Ms. Kinsman left campus on November 14, 2013.  Though there are some indications to the contrary,[5] the complaint fairly alleges that she wishes to remain an FSU student.  ECF No. 1 ¶¶ 27, 122.  Through her lawyers she repeatedly asserted a willingness to cooperate with a Title IX investigation and asked "what response the school believes would address the harassment and allow her to re-enroll in classes

---

[4] To be sure, *Williams* involved two types of claims. One of the claims was as described above.  The second was that the university recruited the student athlete with knowledge of past misconduct, failed to supervise him, and the plaintiff was raped as a result.  477 F.3d at 1294.  Ms. Kinsman does not bring that sort of claim.

[5] *See, e.g.*, ECF No. 1 ¶¶ 113, 145(j).

at Florida State."⁶ *Id.* ¶ 122.  FSU had its own police officer's report as well as TPD's reports.  Presumably, TPD's reports contained the contents of the two interviews of Ms. Kinsman which TPD performed the day after the alleged rape.  Yet the disciplinary hearing did not happen until December 2014.  The complaint does not mention any precautions taken by FSU to prevent future harassment.  According to the complaint, on November 12, 2013, the dean of students told the chief of police about a second student accusing Mr. Winston of sexual assault and assured the chief that a code of conduct proceeding against Mr. Winston *would not* move forward.  *Id.* ¶ 101.

FSU says that after it learned of the allegation in November 2013, it waited for the state attorney to conclude the criminal investigation.  After that, FSU says it reviewed the evidence, attempted unsuccessfully to interview Mr. Winston, and concluded it lacked sufficient evidence to bring charges.  The remaining reason for

---

⁶ FSU has attached both the letters from Ms. Kinsman's lawyers and FSU's responses as exhibits to the motion to dismiss, and urges this Court to consider them.  Although ordinarily a court will consider nothing beyond the complaint when deciding a motion to dismiss, there is an exception "in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).  It may be that the letters are significant.  But they are not central to Ms. Kinsman's claim the way, for example, a written contract is in a breach-of-contract case.  This Court declines to consider them in deciding this motion to dismiss.

14

the year-long delay in arriving at a disciplinary hearing, according to FSU, was its inability to interview Ms. Kinsman.

In sum, FSU offers a different take on some of the facts in the complaint and additional facts that are not in the complaint in an attempt to show its efforts to respond were diligent and genuine, or at least not "clearly unreasonable" under Title IX. This Court does not resolve such factual disputes on a motion to dismiss.

Viewed in the light most favorable to Ms. Kinsman, the complaint plausibly alleges deliberate indifference during this period that effectively denied her the ability to attend FSU. *See Williams*, 477 F.3d at 1297–97.

## VI

The complaint states a claim under Title IX upon which relief may be granted.

For these reasons,

**IT IS ORDERED:**

Defendant's motion to dismiss, ECF No. 35, is **DENIED**.

**SO ORDERED on August 12, 2015.**

s/Mark E. Walker<br>
**United States District Judge**